IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MODESTA A. LUCERO,**

      **Plaintiff,**

vs.                                            **No. CIV 04-1248 LCS**

**JOANNE B. BARNHART,**
**Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and Remand Administrative Agency Decision [Docket #7], filed March 18, 2005. The Commissioner of Social Security issued a final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income. This matter comes before the Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is well-taken and should be **GRANTED**.

**I.     STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disability impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Rayes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See Gibson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.   PROCEDURAL HISTORY

Plaintiff, now 58 years old, filed her applications for disability insurance benefits and supplemental security income on December 3, 2002, alleging disability commencing on January 1, 1996. (R. at 47-49, 175-77). Plaintiff's alleged disability was due to diabetes and hypertension. (R. at 56). Plaintiff completed the third grade (R. at 62), and professes an inability to write or to speak English, Spanish being her native language. (R. at 55). Plaintiff has past relevant work as a

housekeeper and dishwasher. (R. at 57). She is not a United States citizen, but has been admitted for permanent residence to the United States under the Immigration and Nationality Act ("INA"). (R. at 175).

Plaintiff's applications for disability insurance benefits and supplemental security income were denied at the initial level on June 12, 2003 (R. at 25-28, 178) and at the reconsideration level on October 17, 2003. (R. at 31-34, 183). Plaintiff appealed the denial of her applications by filing a Request for Hearing by Administrative Law Judge. (R. at 35-36). Plaintiff retained attorney E.C. ("Mike") Gomez on August 11, 2003. (R. at 21).

The ALJ issued his decision on July 16, 2004 (R. at 12-16), analyzing Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability in 1996. (R. at 13). At the second step, the ALJ found that Plaintiff had an impairment or combination of impairments considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b). (R. at 14). The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.) The ALJ also found that Plaintiff was not fully credible regarding the extent of her limitations. (R. at 15). At step four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform unskilled work at the light exertional level. (R. at 15). Based on this assessment, the ALJ determined at step four that Plaintiff was capable of performing her past relevant work. (Id.) Accordingly, he found that Ms. Lucero had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (R. at 16).

Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council and the Appeals Council denied this request on September 16, 2004. (R. at 5-7). Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On November 2, 2004, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**III.   FINDINGS**

The medical records in this matter date from March, 2003 at which time Plaintiff saw Dr. Karen Balkman for evaluation of diabetes. (R. at 108-114). Dr. Balkman's impression was of diabetes mellitus, not requiring insulin at that time. (R. at 110). The sensory exam was intact, although an opthamology consult was recommended as patient had been diabetic for ten years. (Id.) No neurologic deficits were noted on examination. (Id.) Continued monitoring of Ms. Lucero's blood glucose levels was recommended. Plaintiff was advised not to lift more than 10 pounds frequently and 20 pounds occasionally. (R. at 113). Sitting, standing, and other motor functions were not felt to be limited. (R. at 114).

A vision evaluation performed in May, 2003 revealed early cataract formation and background diabetic retinopathy. (R. at 116). In June, 2003, Dr. Mary Yoder found Plaintiff's physical problems to be well-controlled and non-severe. (R. at 119). Although Ms. Lucero complained of poor vision, her corrected vision was found to be 20/20-2 OU. (Id.) Plaintiff's physical exam was normal with no objective abnormalities observed. (Id.) It was noted that Plaintiff was limited to light lifting due to subjective complaints. (Id.)

Records from Eastern New Mexico Medical Center indicate Plaintiff presented to the emergency room in March, 2003 for treatment of an abscess to the scalp. (R. at 126-134). The

4

wound was approximately the size of a quarter and was treated and rechecked in several days, with no further problems noted in the record. (Id.) Plaintiff again presented to the emergency room in August, 2003 for evaluation of swelling and burning sensations in the right great toe. (R. at 122-124). The toe was noted to be red and warm at the time. (Id.) Plaintiff was treated with antibiotics and the record does not indicate further problems from this incident. (Id.) The record also contains reports from the La Casa Family Health Centers dating from April until September, 2003. (R. at 135-146). These records appear to be related to an infection brought about by an ingrown toenail. Because these records are largely illegible, the exact nature of the condition and treatment is uncertain.

A psychiatric review technique performed in October, 2003 did not reveal any psychiatric disorders, related to claimant's diabetic condition or otherwise. (R. at 148-161). Records from La Casa Family Health Centers from January to April, 2004 reveal that Ms. Lucero received treatment on several occasions for pain and swelling in the joints, apparently at various locations throughout the body. (R. at 162-174). She also received treatment for some type of infection, the nature of which is not clear from the record. (R. at 163). These records are also very sparse and largely illegible.

**IV.   DISCUSSION**

In her Motion to Reverse and Remand Administrative Agency Decision, Plaintiff raises the following allegations of error:

    I.     The ALJ erred in evaluating Claimant's allegations of pain

    II.    The ALJ erred in his determination of Residual Functional Capacity

    III.   The ALJ erred in not considering Claimant's age

### a.     Evaluation of Pain-Producing Impairments

Turning to Plaintiff's first allegation of error, Plaintiff claims the ALJ erroneously ignored evidence of diabetic peripheral neuropathy and further erred in the weight given the opinion of consulting physician, Dr. Karen Balkman to the exclusion of other medical records.

Before addressing Plaintiff's specific arguments, I note that it is Plaintiff's burden, in the first four steps of the sequential evaluation, to establish the presence of a disabling impairment. *Rayes*, 845 F.2d at 243.  In order to establish a disabling impairment, the claimant must present "medical evidence consisting of signs, symptoms, and laboratory findings and not only by [her] statement of symptoms."  20 C.F.R. § 404.1508.

With respect to the weight given to other physician's reports, Dr. Gallardo's records are written entirely in Spanish and are therefore of limited value to the Court.  The ALJ has however, briefly outlined Dr. Gallardo's findings.  Dr. Gallardo's letter apparently indicates that Ms. Lucero is disabled for life from any type of physical or mental activity.  (R. at 14).  The medical basis for this opinion is not apparent and the record contains no evidence that these conclusions are based on any type of laboratory tests or diagnostic studies.  It is well-established that subjective testimony alone of symptoms cannot establish the existence of a disability.  *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988).  Impairments must be established by medical evidence.  *Id*.

Further it is by no means clear from the record provided, which contains only one letter, that Dr. Gallardo was Ms. Lucero's treating physician.  While it is well established that the opinions of treating physicians are entitled to significant weight *if supported by medical evidence* such deference is not required for opinions of consulting physicians.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002).  The ALJ was therefore well within his discretion in not

crediting the opinions of Dr. Gallardo that Ms. Lucero was permanently disabled.

Plaintiff also contends that the records of her treating physicians at La Casa indicate evidence of peripheral neuropathy, which was inappropriately rejected by the ALJ. After having considered the record however, I find no such evidence. The notes of Dr. Gillan most often indicate that claimant was not experiencing pain. (Tr. at 139-143, 166-169). Although on two occasions Dr. Gillan indicated that Ms. Lucero was complaining of pain (Tr. at 163-164), it appears the pain was caused by swelling in the joints on only one occasion. (Tr. at 164). Further, the record does not indicate that this pain resulted from a diabetic peripheral neuropathy. (Id.) As such, the ALJ did not, as Plaintiff contends, err in failing to note evidence of a disabling peripheral neuropathy.

Finally, Plaintiff contends that Dr. Balkman's report, which the ALJ credited, indicates significant limitations which the ALJ chose to ignore. I find no such evidence. Dr. Balkman's report indicated no neurologic deficits in the upper or lower extremities. No deficits in range of motion were noted and motor strength was found to be normal. (R. At 110). Plaintiff was found to have normal strength in the lower extremities and somewhat decreased grip strength in the upper extremities, particularly in the right hand. (R. at 111). However, Dr. Balkman noted Plaintiff's effort during this examination to be only fair. (Id.)

Plaintiff also contends the ALJ erred in concluding that Dr. Balkman found Ms. Lucero "capable of lifting ten pounds frequently and twenty pounds occasionally." (Tr. at 15). Plaintiff is correct to point out that Dr. Balkman in fact indicated Plaintiff could lift twenty pounds occasionally and "less than ten pounds frequently." (Tr. at 111). However, because Dr. Balkman also noted Plaintiff's motor strength to be normal and because the ALJ limited Plaintiff to

7

light work, I find that any error from the ALJ's misstatement of the record was harmless.

### b. Evaluation of Residual Functional Capacity

Plaintiff's next allegation of error is that the ALJ erred at step four by failing, in making his RFC determination, to adequately compare the requirements of Ms. Lucero's past relevant work with Ms. Lucero's limitations. Step four of the sequential analysis is comprised of three phases. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). In the first phase, the ALJ mut evaluate the Plaintiff's mental and physical residual functional capacity. SSR 86-8, Soc. Sec. Rep. Serv., Rulings 1983-1991, 423, 427 (West 1992). At the second phase, the ALJ must determine the physical and metal demands of Plaintiff's past relevant work. 20 C.F.R. § 404.1520(e). Finally, the ALJ must determine whether the claimant retains the ability to meet the job demands found in phase two despite the physical and/or mental limitations found in phase one. SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1872, 809; *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

At step one, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level. (R. at 15). He based this finding largely on Dr. Balkman's report which indicated that, although Plaintiff had suffered from diabetes for the previous ten years, she had no significant neurologic and/or motor deficits. (R. at 14-15). Upon examination, Ms. Lucero was not found to have any significant vision deficits. (R. at 15). The ALJ also credited Dr. Balkman's opinion that Plaintiff was capable of performing light work. (R. at 14).

At step two, the ALJ has a duty to develop the record regarding the requirements of a claimant's past work. *Henrie v. Dep't of Health & Human Servs*, 13 F.3d 359, 360-61 (10th Cir. 1993). As noted by the ALJ, Ms. Lucero has past relevant work as a dishwasher and

housekeeper. (R. at 15). At Plaintiff's hearing, the ALJ questioned the vocational expert regarding the demands of Plaintiff's past relevant work. (R. at 205-206). The VE indicated that both jobs were classified as light work. (Id.)

At step three, the ALJ found that, because Plaintiff retained the RFC for light work, and because her past relevant work is classified as light work, Plaintiff was capable of returning to her past relevant work. Plaintiff argues that the ALJ erred in failing to analyze the demands of light work with respect to Plaintiff's lifting limitations, shoulder pain, elbow pain, grip limitations and numbness of the lower extremities. The majority of these limitations are not borne out by the record. Regarding lifting restrictions, Dr. Balkman did place restrictions on Plaintiff, but also indicated that Plaintiff was capable of performing light work. As such, Plaintiff's contention that the ALJ erred in evaluating her RFC must be rejected.

### c. Evaluation of Plaintiff's Age

Finally, Plaintiff argues that the ALJ erred in his assessment of her RFC by failing to consider her advanced age. Plaintiff relies for this argument on the Tenth Circuit case of *Dikeman v. Halter*, 245 F.3d 1182, 1188 (10th Cir. 2001). The Commissioner argues that *Dikeman* is distinguishable from the present case. *Dikeman* involved a step five case in which the Commissioner determined the claimant was incapable of returning to her past relevant work and therefore had to ascertain whether the claimant had any transferable skills. *Id.* at 1184. The present case involved a step four determination that Plaintiff retained the residual functional capacity to perform her past relevant work.

However, in *Dikeman* the Court noted that the Commissioner faces a more stringent burden when denying disability benefits to older claimants. *Id.* The acquisition of skills that are

9

transferable to other work will give a claimant "a special advantage over unskilled workers in the labor market." *Id.*; SSR 82-41 WL 31389, at *2 (1982).  The Court noted that the ALJ may therefore find that a younger claimant with a high school education capable of performing sedentary work is not disabled, even if that claimant can only perform unskilled work.  *Id.*; 20 C.F.R., Pt. 404, Subpt. P App. 2 § 201.21.  To find the same claimant not disabled when she is closely approaching advanced age, the ALJ must also find that the claimant acquired skills in her past work that are transferable to other skilled or semi-skilled jobs.  *Id.*§§ 201.14, 201.15.[1]

The Court thus indicated that the burden on the Commissioner is greater when dealing with older claimants, particularly when those claimants are only qualified to perform unskilled work.  *Dikeman*, 245 F.3d at 1184.  It is the case that *Dikeman* and the sections cited from the C.F.R. deal with individuals unable to perform their past relevant work.  However, because Ms. Lucero is of advanced age, as defined in 20 C.F.R. § 404.1563(d), because it is apparent from the record that she is capable only of unskilled work, and because it is not clear that the ALJ took Claimant's age into account, I think it prudent to remand this matter to the Commissioner for further consideration of what effect, if any, Ms. Lucero's age should have on the ALJ's finding of not disabled.[2]

---

[1]*See also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c); "[F]or individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by a functional restriction to light work warrant a finding of disabled.  Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education."

[2]If upon remand, the ALJ's analysis reaches step five, I suggest a finding concerning the impact of Plaintiff's illiteracy in English on her ability to work.  El analfabertismo en el idioma predominante puede afectar de forma sustancial la capacidad de encontrar trabajo en la economía nacional.  See Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 § 220.129; Social Security Acquiescence Ruling 86-3(5).

**V.     CONCLUSION**

Upon review of the evidence presented on this Motion to Reverse and Remand Administrative Agency Decision, the Court has determined that the Commissioner's decision should be remanded for further consideration of what effect, if any, Plaintiff's age should have on the ALJ's findings.  Accordingly, Plaintiff's Motion to Reverse and Remand is **GRANTED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE**.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**